COVELL *v.* COMMON COUNCIL OF VILLAGE OF FIFE LAKE.

1. INTOXICATING LIQUORS—LICENSE—VILLAGES—REVOCATION.
   The provisions of Act No. 321, Pub. Acts 1907 (3 How. Stat. [2d Ed.] § 8165), providing that when a majority of the qualified electors of a village equal to the majority of votes cast for governor at the last general election shall file a petition protesting against the acceptance of any retail liquor bond, given by a surety company, the council shall not accept such bond, is enforceable and valid. The court is entitled to determine the question as to the sufficiency of number of signers from the poll list and testimony of witnesses that are familiar with the residence of the electors and such other evidence as is available.

2. SAME—EVIDENCE—ELECTIONS.
   In the absence of evidence tending to prove that the poll list was inaccurate, it cannot be said that the evidence offered was insufficient or that it should have been supplemented by the registration lists.

3. SAME—PARTIES—PROSECUTING ATTORNEY.
 The prosecuting attorney was a proper party to institute
  mandamus proceedings to prevent the acceptance of a
  bond in violation of statute.

4. SAME—BONDS—PETITION OF PROTEST.
 The filing of a petition favoring acceptance of a surety
  company bond and the fact that some of the names
  signed to the petition of protest also appeared on the peti-
  tion favoring the acceptance of a surety company bond,
  could not be considered. The common council was re-
  quired to act on the petition of protest authorized by the
  statute.

Certiorari to Grand Traverse; Mayne, J. Sub-
mitted January 20, 1914. (Calendar No. 25,871.)
Decided March 26, 1914.

Mandamus by George G. Covell, prosecuting attor-
ney of Grand Traverse county, against the common
council of the village of Fife Lake, to require defend-
ant to convene and vacate its action approving a
liquor bond. An order granting the writ is reviewed
by defendants on certiorari. Affirmed.

*Ernest C. Smith* and *Parm C. Gilbert*, for appel-
lants.

*Claude H. Stevens (John W. Patchin*, of counsel),
for appellee.

BROOKE, J. This action is certiorari to review pro-
ceedings in the circuit court for the county of Grand
Traverse, in which a writ of mandamus was issued
directing the respondent village council to meet and
vacate the proceedings, whereby the liquor bonds for
the year 1913-14 of the respondent Miller Hobbs,
signed by the Michigan Bonding & Surety Company
as surety, were approved and directing respondent
John Hoxie, treasurer of the county of Grand
Traverse, to revoke the license for the year 1913-14

issued to said Hobbs upon the strength of said bonds unlawfully approved.

The finding of the learned circuit judge follows:

"Act No. 321, Public Acts of 1907, provides:

" 'That whenever a majority of the qualified electors of any township, village or city, equal to a majority of the votes cast for governor at the last general election, shall file a petition * * * ' protesting against the acceptance of the bonds offered by any individual, firm or corporation proposing to engage in the sale of intoxicating liquors at retail, it shall be unlawful for such township * * * to accept such bonds' (surety company bonds).

'Such a protest signed by the required number of electors was presented to the village of Fife Lake. The only requirement of the individual signer to such protest is that he is a qualified elector, and the number of such electors shall equal the majority of the votes cast for governor at the last general election. The signer may not have voted at the last election; in fact, he may never have voted. He may have come of age or moved into the election precinct subsequent to the last election and be a competent signer. The statute does not designate the proof required as to the qualifications of the signers. I therefore conclude that any competent proof of the fact is sufficient. In my opinion the admission of counsel and the proofs submitted establish the fact that a majority of the qualified electors of the village of Fife Lake, equal to the majority of the votes cast for governor at the last general election, signed the petition, and that the council could not ignore the same. If a question as to the qualifications of the signers was presented, such fact should appear. This would enable the petition- ers to establish the qualifications of the signers, or to obtain the signatures of other electors, if necessary.

"Another petition was presented at the same time asking respondents to accept surety company bonds. The names of certain signers appeared upon both petitions. Deducting the names of those signing both petitions, the required number of electors would not appear upon the petition of protest. The time when this second petition was circulated and the signatures

obtained, and the circumstances under which it was obtained, do not appear in evidence. As far as anything in relation to the circulation and signing of the second petition does not appear, the fact is established that the so-called second petition antedated the petition of protest as to the time of its circulation. I do not consider, however, that this second petition, so called, nullifies the act of the first or petition of protest. A legal petition was filed, and the results provided in the statute must follow such filing. This particular act has been considered by our Supreme Court, and no intimation given that the same was unconstitutional, or that it was subject to the infirmities suggested by counsel for respondent. *Village of Wolverine* v. *Cheboygan Circuit Judge,* 162 Mich. 713 [127 N. W. 744]. Prayer of petitioner will be granted and writ issue."

The respondent village council has removed the proceeding to this court for review by writ of certiorari.

Respondent contends:

*First.* That the provisions of Act No. 321 of the Public Acts of 1907 (3 How. Stat. [2d Ed.] § 8165), with reference to the filing of petitions of protest with village councils are incapable of enforcement.

It is argued that, because villages are not separate voting precincts at general elections, the electors thereof at such elections voting in common with the electors of the township, there can consequently be no separate canvass of village votes at a general election and no records made from which it can be certainly determined how many village votes were cast for governor at the last general election.

It will be noted that the statute indicates no method by which the village council is to determine whether the petition of protest is in fact signed by the requisite statutory number of electors, but upon the filing of such a petition it is made the duty of the council to reject such bonds. This, of course, presupposes that the council must determine the fact from

such legal sources as are available. Ordinarily the number of electors in a village is not large, and an examination of the poll list of the township at the last general election would seem to afford a reasonably accurate method of determining how many electors of the village voted for governor. With knowledge of the limitations under which the village counsel would necessarily act, it may be presumed that the legislature did not intend to impose absolute and impossible accuracy.

From such an examination, supplemented by evidence of those familiar with the residence of the electors, it is apparent that the learned circuit judge found no difficulty in arriving at a conclusion which we believe to be correct.

*Second.* It is contended that there was no competent proof offered that the persons who signed the petition of protest were qualified electors of the village. It is urged that the registration list instead of or in addition to the poll list should have been produced. Again we note that the statute is silent as to the method to be employed in determining this fact, and we cannot say that the evidence relied upon (in the absence of all evidence to the contrary) was insufficient.

*Third.* The prosecuting attorney is not authorized to prosecute or conduct these proceedings.

This point is decided adversely to the claim of the respondent in the case of *Village of Wolverine* v. *Cheboygan Circuit Judge,* 162 Mich. 713 (127 N. W. 744).

*Fourth.* It appears that on April 14, 1913, there was presented to the village council two petitions, one against and one in favor of accepting bonds of surety companies. The one against was signed by 48 electors. The one favorable was signed by 59 electors. Eight names appeared upon both petitions.

Though both were presented to the council upon the same day, the favorable petition was filed on March 3d, while the one against was not filed until the day it was considered, April 14th. It is claimed that consideration should have been given to the favorable petition. A sufficient answer to this claim is to be found in the fact that there is no provision in the statute for such a petition. The council must act upon the filing of a petition of protest bearing the signatures of a statutory number of electors. It might easily happen that the petition of protest would comply with the statutory requirements, and yet that a majority of the electors of the village favored the acceptance of the bonds in question. It may have so happened in the case at bar. That fact, however, does not permit the council to ignore a valid petition of protest.

It is urged that the eight names appearing upon both petitions should be discarded. The favorable petition not being entitled to consideration, that contention is untenable.

The writ of certiorari is dismissed, and the action of the circuit court is affirmed.

McAlvay, C. J., and Kuhn, Stone, Ostrander, Bird, Moore, and Steere, JJ., concurred.